IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **HOAI THANH** | * | |
| Plaintiff | * | |
| v. | * | Civil No. **PJM 14-448** |
| **HIEN T. NGO** | * | |
| Defendant | * | |

## **MEMORANDUM OPINION**

This case ("*Thanh II*") represents another chapter in the seemingly endless litigation between Hoai Thanh and Hien T. Ngo. The factual and procedural background of the case may be found in the Court's Opinion in *Hoai Thanh v. Hien T. Ngo*, Civ. No. 11-PJM-1992 (May 8, 2015) ("*Thanh I*"), the last battleground between these disputants before the present case.

**A.**

The Court has before it in the present case Defendant Ngo's Motion to Dismiss. ECF No. 7. Consideration of this motion requires the Court to re-visit *Thanh I*.

In *Thanh I*, on November 27, 2013, Thanh filed a Motion to Amend his Complaint, which would have added further defamation and false light claims to that case. The Court held that the motion came too late in that proceeding since, as early as September 17, 2012, Thanh had represented to the Court that he planned "to file a motion to amend the Complaint to include what [Thanh] contends are specific additional instances of defamation and false light invasion of privacy." *Thanh I*, ECF No. 49, at 2. As a result, the Court denied Thanh's Motion to Amend, but did grant him leave to file a separate lawsuit alleging any cause of action included in the

Motion to Amend that was not already part of *Thanh I*. *See* Order of January 14, 2014, *Thanh I*, ECF No. 105, at 2. This is that separate lawsuit.

Thanh filed his Complaint in the present case (*Thanh II*) on February 14, 2014. ECF No. 1. He filed his First Motion to Amend the Complaint in this case on June 13, 2014. ECF No. 6. Pursuant to Federal Rule of Civil Procedure 15(a)(1), Thanh was entitled to amend the Complaint as a matter of course within 21 days of serving the initial Complaint and, since Ngo was served on June 7, 2014, ECF No. 5, *i.e.*, within 21 days, Thanh was entitled to amend. The Court therefore granted the First Motion to Amend the Complaint by marginal order dated March 30, 2015. ECF No. 13.

Ngo filed a Motion to Dismiss the First Amended Complaint on June 30, 2014. ECF No. 7. Before the Court could rule on the Motion to Dismiss, Thanh filed a Second Motion to Amend the Complaint on July 24, 2014, ECF No. 9, in which he sought to make one simple amendment to the First Amended Complaint. In the First Amended Complaint, Thanh had alleged that he was "a resident of Virginia" and Ngo was "a resident of Maryland." ECF No. 6-2. In the Second Amended Complaint, Thanh changed "resident" to "citizen," such that Thanh now alleged he was "a citizen of Virginia and the defendant [was] a citizen of Maryland." Ngo did not oppose this change, but otherwise stated her opposition to the Second Motion to Amend on the grounds that it failed to cure the other deficiencies outlined in her Motion to Dismiss, and that any amendment was therefore futile. Def.'s Resp. Br., ECF No. 10. Since Rule 15(a)(2) provides that a court should freely grant leave to amend when justice so requires, the Court granted Thanh's First Motion to Amend the Complaint by marginal order on March 30, 2015. ECF No. 12.

Although the Motion to Dismiss is now moot on jurisdictional grounds, the Court holds that its grant of leave to Thanh to file the Second Amended Complaint did not moot Ngo's Motion to Dismiss on non-jurisdictional grounds.[1]

Having granted summary judgment in favor of Ngo on all claims in *Thanh I*, *see* Opinion, *Thanh I*, ECF No. 147, the Court turns to the Motion to Dismiss in *Thanh II*.

**B.**

Ngo argues that Thanh's claims for malicious prosecution in the present suit should be dismissed, because this Court already entered summary judgment against Thanh on exactly the same allegations in *Thanh I*. Ngo is correct. The malicious prosecution claims (more accurately styled as "malicious use of process" claims) in the Second Amended Complaint are virtually identical to the malicious prosecution claims as to which the Court granted summary judgment in favor of Ngo in *Thanh I*. *See* Order, *Thanh I*, ECF No. 121; *compare* Second Amended Compl. ¶¶ 108-132, *Thanh II*, ECF No. 9-2 *with* Compl. ¶¶ 92-116, *Thanh I*, ECF No. 10. Thanh's malicious prosecution claims in *Thanh II* are therefore barred by reason of *res judicata* and Ngo's Motion to Dismiss the malicious prosecution claims herein is **GRANTED**.

---

[1] Rather than re-filing her Motion to Dismiss after the Court granted Thanh leave to file the Second Amended Complaint, Ngo instead filed an Answer to the Second Amended Complaint. ECF No. 14. In the interest of judicial economy, the Court considers Ngo's Motion to Dismiss insofar as it applies to the Second Amended Complaint, which, as noted, is identical to the First Amended Complaint except for substituting the word "resident" for the word "citizen" in the jurisdictional allegations. The Court need not tarry over whether the filing of the Second Amended Complaint moots the Motion to Dismiss. The Court believes it does not. In any event, under Rule 12(c), a court may act *sua sponte* when, as here, it determines after the pleadings are closed that there is no material issue of fact presented and that one party is clearly entitled to judgment. *See Flora v. Home Fed. Sav. & Loan Ass'n*, 685 F.2d 209, 211 (7th Cir. 1982); *Lyon v. Chase Bank USA, N.A.*, 656 F.3d 877, 883 (9th Cir. 2011) (no error for district court to dismiss *sua sponte* under Rule 12(c)).

Ngo next submits that all but one of Thanh's defamation and false light claims in the present case are barred by applicable statutes of limitations. The Court reviews the various claims.

First, the legal framework:

Every alleged defamatory statement constitutes a separate instance of defamation, which a plaintiff must specifically allege. *Gainsburg v. Steben & Co.*, 838 F. Supp. 2d 339, 344 (D. Md. 2011) (citing *English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, 172 F.3d 862 (4th Cir. 1999)), *aff'd*, 519 F. App'x 199 (4th Cir. 2013). The applicable limitations period for a defamation claim is one year. Md. Code, Cts. & Jud. Proc. Art., § 5-105. The Maryland Court of Special Appeals has held that the applicable limitations period for a false light claim is three years. *See Allen v. Bethlehem Steel Corp.*, 76 Md. App. 642, 649 (1988) (construing Md. Code Ann., Cts. & Jud. Proc. § 5-101). Accordingly, Thanh must have filed a complaint specifically alleging each allegedly defamatory or falsely lighting broadcast within one year of the broadcast (for defamation claims) or within three years of the broadcast (for false light claims),[2] unless the statute of limitations was otherwise tolled.

---

[2] Although ordinarily the limitations period runs from the time the defamatory statement is published, Maryland follows the discovery rule, which provides that a cause of action accrues at the time the plaintiff knows or reasonably should know of the wrong. *Gainsburg*, 838 F. Supp. 2d at 342 (citing *Interphase Garment Solutions, LLC v. Fox Television Stations, Inc.*, 566 F.Supp.2d 460, 464 (D. Md. 2008)). Thanh alleges that he learned of one particular broadcast (the internet broadcast of October 2, 2011) some six months after it was broadcast. *See* Compl. ¶ 61, ECF No. 1. Thanh does not allege that he discovered any other particular broadcast at any time after it was broadcast, and, indeed, Thanh maintained throughout *Thanh I* that Ngo repeatedly made defamatory/false light statements about him over a period extending over several years. Thanh therefore was on notice and cannot fairly claim that he became aware of a given broadcast at any time other than when it was actually broadcast. Accordingly, with the exception of the October 2, 2011 publication, the Court finds that Thanh knew or reasonably should have known of each of the broadcasts as of the date that they were broadcast.

**C.**

**Claims Asserted in *Thanh II* Complaint**

Scattered throughout Thanh's sixty-five page Complaint in *Thanh II* are eleven different broadcast dates, each of which the Court will assume without deciding is a well-pleaded claim. Thanh's Complaint in *Thanh II* was filed on February 14, 2014. Nine of the claims in *Thanh II* Thanh sought to raise by his Motion to Amend the Complaint in *Thanh I*, which was filed on November 27, 2013. For purposes of calculating the limitations period in the present case, *Thanh II*, the Court will assume without deciding that the nine claims Thanh attempted to raise when he sought to amend his complaint in *Thanh I* were asserted as of November 27, 2013, the date that the Motion to Amend the Complaint in *Thanh I* was filed.[3] The Court will consider the two claims not raised in the Amended Complaint in *Thanh I* as having been asserted on February 14, 2014, when the Complaint in *Thanh II* was filed.

Three of the allegedly defamatory broadcasts asserted in the present case—on October 6, 2001, Compl. ¶ 27, ECF No. 1, September 2, 2004, Compl. ¶ 29, ECF No. 1, and December 23, 2004, Compl. ¶ 29, ECF No.1—were asserted as claims in *Thanh I*. The Court granted summary judgment in favor of Ngo as to all three of these claims in that case. Order, *Thanh I*, ECF No. 105; Final Order of Judgment, *Thanh I*, ECF No. 148. Accordingly, Thanh's claims as to the October 6, 2001, September 2, 2004, and December 23, 2004 broadcasts asserted in the present case are barred by reason of *res judicata*, and are dismissed with prejudice.

---

[3] As it turns out, it makes no difference whether the Court considers the date of filing for limitations purposes to be the date of the filing of the Amended Complaint in *Thanh I*, November 27, 2013, or the date of the filing of the Complaint in *Thanh II*, February 14, 2014. Except for the October 2, 2011 claim, which is timely under either filing date, all other claims are untimely or otherwise barred under either filing date.

Claims related to seven broadcast dates pleaded in the present case are barred by reason of the statutes of limitations for both defamation (1 year) and false light (3 years), as the following chart demonstrates:

| Date of Broadcast | *Thanh I* Amended Compl. (filed 11/27/13) | *Thanh II* Compl. (filed 2/14/14) | Years Elapsed between Broadcast and Filing of *Thanh I* Amended Compl. | Years Elapsed between Broadcast and Filing of *Thanh II* Compl. |
|---|---|---|---|---|
| 10/21/2001 | | ECF No. 1 ¶ 30 | n/a | 12.3 |
| 9/7/2004 | ECF No. 96-1 ¶ 33 | ECF No. 1 ¶ 26 | 9.2 | 9.4 |
| 12/6/2005 | | ECF No. 1 ¶ 29 | n/a | 8.2 |
| 12/11/2005 | ECF No. 96-1 ¶ 33 | ECF No. 1 ¶ 26 | 8.0 | 8.2 |
| 4/6/2006 | ECF No. 96-1 ¶ 33 | ECF No. 1 ¶ 26 | 7.6 | 7.9 |
| 12/6/2006 | ECF No. 96-1 ¶ 33 | ECF No. 1 ¶ 26 | 7.0 | 7.2 |
| 12/10/2006 | ECF No. 96-1 ¶ 33 | ECF No. 1 ¶ 26 | 7.0 | 7.2 |

Because claims as to these seven broadcast dates were not raised in *Dai Chung News Media Inc., et al. v. Ngo, et al.*, 04-RWT-4033 (D. Md. Dec. 27, 2004) ("*Dai Chung I*"), *Dai Chung News Media, Inc., et al v. Ngo, et al.*, 05-AW-3420 (D. Md. Dec. 22, 2005) ("*Dai Chung II*"), or in *Thanh I*, no tolling is applicable. Since all the claims, as shown by the chart, fall well outside limitations for both defamation and false light claims, Thanh's claims as to these seven broadcasts are dismissed in the present case with prejudice.

That leaves one and one only of the broadcast dates alleged in the original Complaint in this case: a purported October 2, 2011 posting of a document on the Internet. *See* Compl. ¶¶ 60-66, ECF No. 1. Thanh alleges that he only learned of this broadcast on April 6, 2012, some six months after it was broadcast. *See* Compl. ¶ 61, ECF No. 1. As of November 27, 2013, the base filing date for broadcast, some two years and one month had passed since it was published, and one year and seven months had passed after Thanh claims to have discovered it. Thanh filed his Complaint in in this case, *Thanh II*, alleging claims related to this broadcast some two years and

four months after it was published, and one year and ten months after he alleges that he discovered it. As such, the October 2, 2011 broadcast falls outside the one year statute of limitations for defamation claims, but falls within the three year statute of limitations for false light claims. Accordingly, Thanh's defamation claim as to the October 2, 2011 broadcast is dismissed with prejudice; his false light claim as to the October 2, 2011 broadcast remains in the case—for now.

**D.**

**<u>Claims Asserted in *Thanh II* First Amended Complaint</u>**

Thanh's First Amended Complaint in this case alleged four new broadcast dates as defamation and false light causes of action: specifically, March 21, 2006, March 31, 2006, April 8, 2011, and April 18, 2011. That is, these broadcast dates were not asserted in any prior complaint in *Dai Chung I*, *Dai Chung II*, *Thanh I*, or *Thanh II*, which means no tolling of limitations applies. The Court therefore considers the claims as to these four dates as having been raised as of June 13, 2014, when the First Amended Complaint in *Thanh II* was filed, unless the claims are deemed to relate back to February 14, 2014, the date the original Complaint in this case was filed.

Federal Rule of Civil Procedure 15(c) provides that an amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading. *See Gainsburg*, 838 F. Supp. 2d at 342 (D. Md. 2011). The Fourth Circuit has identified two requirements for a claim to relate back under Rule 15(c): (1) there must be a factual nexus between the amendment and the original complaint, and (2) the defendant must

have notice of the claim and must not be prejudiced by the amendment. *Id.* (citing *Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir. 1983)).

Two of the four new broadcast dates asserted in the First Amended Complaint in the present case (March 21, 2006 and March 31, 2006) concern alleged rebroadcasts of the September 2, 2004 broadcast at issue in *Thanh I*. *See* First Amended Compl. ¶¶ 27, 84, ECF No. 6-2. They were not asserted in any complaint in *Dai Chung I*, *Dai Chung II*, or *Thanh I*. As such, limitations has never been tolled as to these two dates. As a result, the Court need not address whether these two claims relate back to the filing of the Complaint in *Thanh II* because, even assuming they did, they still would have been asserted over seven years after the broadcasts took place—far outside the statute of limitations for both defamation and false light. Thanh's false light and defamation claims as to March 21, 2006 and March 31, 2006 are thus dismissed with prejudice.

The remaining two new broadcast dates asserted in the First Amended Complaint in this case (April 8, 2011 and April 18, 2011) relate to mass emails allegedly sent by Ngo to thousands of members of the Vietnamese American community. *See* First Amended Compl. ¶¶ 69-75, ECF No. 6-2. These broadcasts were not asserted in any prior complaint in *Dai Chung I*, *Dai Chung II*, or *Thanh I*, such that limitations has never been tolled as to these two claims. Nor were these claims specifically alleged in the original Complaint in *Thanh II*. Again, the Court need not address whether or not the defamation claims as to these two broadcasts relate back to the filing of the original Complaint in *Thanh II* because, even assuming they did, they still would have been asserted more than two years after the events took place, far outside the statute of limitations for defamation. Thanh's defamation claims as to April 8, 2011 and April 18, 2011 are accordingly dismissed with prejudice.

If, however, the false light claims as to the April 8, 2011 and April 18, 2011 broadcasts are deemed to relate back to the filing of the original Complaint in *Thanh II* on February 14, 2014, they would fall within the three year statute of limitations for false light. If the claims do not relate back to the Complaint in *Thanh II*, they would fall outside the statute of limitations for false light.

The question, then, is whether there is a factual nexus between the claims in the First Amended Complaint and those in the original Complaint, and whether Ngo has received fair notice of the claim and would not be prejudiced by the relating back. The Court finds no relation back.

These two mass <u>email</u> broadcasts of April 8, 2011 and April 18, 2011 do involve the same basic allegations at issue in *Thanh I* and elsewhere in the Complaint in *Thanh II*; *i.e.*, that in <u>radio</u> broadcasts and re-broadcasts Ngo committed false light invasion of privacy by describing Thanh as dishonest in business dealings. However, the present claims refer to mass electronic mailings on April 8, 2011 and April 18, 2011, not radio broadcasts. The only reference to a mass email in the original Complaint in this case was in connection with the October 2, 2011 claim, which concerned the publication of a document to the internet. *See* Compl ¶ 93 (referring to a "blast email posted at Google on the Internet on October 2, 2011"); *see also id.* ¶ 61. There is no indication that the mass email or document that Ngo allegedly posted to the internet on October 2, 2011 is the same mass email that Ngo allegedly sent on April 8, 2011 and April 18, 2011; indeed, the First Amended Complaint does not state that they are the same email, and offers differing descriptions of their contents. *Compare, e.g.*, First Amended Compl. ¶¶ 62-68 (alleging that October 2, 2011 broadcast falsely accuses Thanh of being a communist, an infidel, and a perjurer) *with* First Amended Compl. ¶¶ 69-75 (alleging that April 8, 2011 and April 18,

2011 broadcasts falsely accuse Thanh of being illiterate and in bankruptcy). Moreover, the false light claims as to the April 8, 2011 and April 18, 2011 emails in the First Amended Complaint are clearly distinct from and could not have provided notice of a false light claim based on the October 2, 2011 email/internet publication in the *Thanh II* Complaint. *See Gainsburg*, 838 F. Supp. 2d at 344.

Thanh cannot avoid the effect of limitations on these separate instances of false light invasion of privacy, each of which would support an independent recovery, by simply alleging that they were part of a pattern of false statements made for the purpose of bringing Thanh into disrepute. In rejecting a similar argument, this Court noted that the Fourth Circuit has clearly held that a "plaintiff may not baldly allege a broad course of conduct over a lengthy period of time and later sue on any act that occurred during that time period." *See id.* (citing *English Boiler & Tube, Inc.*, 172 F.3d 862, at *3). The Court finds that the April 8, 2011 and April 18, 2011 broadcasts do not relate back to the filing of the Complaint in *Thanh II*. Accordingly, for purposes of calculating the limitations period in *Thanh II*, the Court will consider these two claims as having been asserted on June 13, 2014, the date of the filing of the First Amended Complaint.

This means that Thanh filed the First Amended Complaint in the present case more than three years after the April 8, 2011 and April 18, 2011 broadcasts. Both claims are therefore barred by limitations for both defamation and false light claims, and are dismissed with prejudice.

Summarizing to this point, the Court **GRANTS** Ngo's Motion to Dismiss with prejudice as to all defamation claims in this case. The Court **GRANTS** Ngo's Motion to Dismiss with

prejudice as to all false light claims except for the October 2, 2011 claim, which the Court finds was filed within three years of February 14, 2014.

## E.

But does Thanh's false light claim as to October 2, 2011, *see* Second Amended Compl. ¶¶ 62-68, ECF No. 7-1, state a claim upon which relief can be granted, another ground on which Ngo seeks dismissal?

To survive a motion to dismiss, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009). Although a court will accept factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

The elements of a claim of false light invasion of privacy are: (1) publicity in a false light before the public; (2) which a reasonable person would find highly offensive; and (3) that the actor had knowledge of or acted in reckless disregard of the publicized matter placing plaintiff in a false light. *Cambridge Title Co. v. Transamerica Title Ins. Co.*, 817 F. Supp. 1263, 1278 (D. Md. 1992) *aff'd*, 989 F.2d 491 (4th Cir. 1993). An allegation of false light must meet the same legal standards as an allegation of defamation. *Piscatelli v. Van Smith*, 424 Md. 294, 306 (2012). In order to plead properly a defamation claim under Maryland law, a plaintiff must allege specific facts establishing four elements to the satisfaction of the fact-finder: (1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm. *Id.* For purposes of the first element, a defamatory statement is one that tends to

expose a person to public scorn, hatred, contempt, or ridicule, which, as a consequence, discourages others in the community from having a good opinion of, or associating with, that person. Under the second element, a false statement is one that is not substantially correct. The plaintiff carries the burden to prove falsity. *Id.*

Ngo argues that Thanh's false light allegation as to the October 2, 2011 email fails to state a claim for two reasons.

First, she argues that the allegations are not even plausibly defamatory. Thanh, she says, quotes passages from the alleged actionable publication and draws his own conclusions about what the passages say or mean, but in fact Thanh's conclusions are not supported by the passages themselves. Second, Ngo argues that none of the statements rise to the level of being "highly offensive to a reasonable person."

The Court agrees with Ngo that it is not entirely clear that the passage quoted at paragraph 64 of Thanh's Second Amended Complaint "plainly indicates that [Thanh] is a communist or under control of the hated communist government in Vietnam,"[4] and agrees that

---

[4] "64. One passage from this publication placing the plaintiff in a false light read as follows:

**Note 5 on the said article:** In reference to the sentence "the *popular newspaper* printed accusations," I wonder if You Two (alluding to (VN communist president) Chairman Nguyen Minh Triet & Premier Nguyen Tan Dung – Translator's Note) meant not to capitalize it as Dai Chung *Popular Newspaper*). I fear you did because it is the very publication of Mr. Hoai Thanh, who is mainly an auto body shop repairer holding screws and painting guns, not a pen-holder, but wants to be known as an intellectual; and, for this purpose, hired an overseas student from VN today to run his newspaper. I wonder if You Two incited this student or another unknown collaborator of his when either party wrote an article to accuse me of collecting about $100,000 but sharing only $5,000 with Rev. Nguyen Van Ly so that Mr. Hoai Thanh might be proud when readers assumed that he was the article's author under the pen name Van Nam. I have sued Mr. Hoai Thanh for this wrongdoing. Additionally I proved my sending money by means of wire transfer records, receipts by quick money-transferring agencies, and the receipts from spiritual leaders inside of Vietnam such as Rev. Nguyen Van Ly and Rev. Nguyen Huu Giai, as well as Ven. Thich Khong Tanh, and Thich Thai Hoa,

the passage quoted at paragraph 65 does not literally call Thanh a "crook."[5] But for present purposes the Court allows that a trier of fact might reasonably infer that the passages could be read the way that Thanh reads them. Moreover, at least one of the quoted passages if proven and, viewed in the light most favorable to Thanh, does plausibly imply that he is "too stupid to run a newspaper," as Thanh alleges. *See* Second Amended Compl. ¶ 64, ECF No. 7-1 ("Thanh, who is mainly an auto body shop repairer holding screws and painting guns, not a pen holder, but wants to be known as an intellectual; and for this purpose, hired an overseas student from VN today to run his newspaper."). Other quoted passages explicitly state that Thanh is a cheater, an infidel,

---

> v.v…since then, Popular Newspaper (Dai Chung) has lost ads and profits, and then has ceased publication itself. Also ever since, Hoai Thanh the auto body shop owner-turned editor has been disappearing from the Vietnamese Community of Greater Washington. Upon request, I'm faxing copies of wire money transfer from the account of CRFV at First Union Bank to Rev. Ly's account at VietCom Bank, as well as quick money transfer records. You Two also can listen to Rev. Ly's acknowledging receipt of more than one hundred thousand U. S. dollars for flood relief in the special interview restored at website www.tudotongiao.org[.]

This passage plainly indicates that the plaintiff is a communist or is under the control of the hated communist government in Vietnam[.]" ECF No. 9-2, at 30-31.

[5] "65. In the same false lighting publishing another passage states as follows:

> **Rebuttal 8:**
> Mrs. Minh, owner of a hair cuttery, voluntarily phoned me at will to retell me how she had lent Mr. Hoai Thanh money. (I'm still keeping the tape recording of the call as a souvenir.) When she wanted him to pay back, he reportedly asked her to come to his home and pick up all pieces of property that are equal in total value to his debt. Upon her arrival at his home, however, Mr. Hoai Thanh called the police to arrest her by reason of her illegal trespassing. And then how her hands were cuffed. But thanks to the bond by a close friend who formerly was an officer in the U.S. Army, she was set free. It's memorable that this money loan happened between the end of 1970's and the start of 1980's when Vietnamese priests or Buddhist monks had not come to serve their congregations in the Washington area. Needless to say, on the other hand, the loan had never been recounted in *Popular Dai Chung Newspaper* for "nobody wants to tell the public that he or she is to blame as long as he or she not yet exposed to the public." (This fact may be proved by *Popular Newspaper's* readers, too.)

This calling of the plaintiff a crook placed him in a false light[.]" ECF No. 9-2, at 31-32.

and bankrupt. Second Amended Compl. ¶ 66, ECF No. 7-1 ("Mr. Hoi Thanh has cheated [a particular business owner] $10,000. [ . . . ] But fooled up by Mr. Hoai Thanh the infidel man, [the business owner] sued Mr. Hoai Thanh even though Hoai Thanh's wife pretended to lose consciousness in the court and Hoai Thanh has filed bankruptcy.").

Finally, and most significantly, the Second Amended Complaint quotes a passage from the October 2, 2011 publication that purports to describe Thanh's dealings with a Mrs. Minh, to whom Thanh supposedly owed a debt. The quoted passage states that "Mrs. Minh [ . . . ] voluntarily phoned me [Ngo] at will to retell me [Ngo] how she had lent Mr. Hoai Thanh money," and when Mrs. Minh arrived at Thanh's house to collect her debt, Thanh called the police to arrest Minh, and she was handcuffed, arrested, and set free on bond. Second Amended Compl. ¶ 65, ECF No. 7-1. But Thanh's Second Amended Complaint references a deposition of Mrs. Minh taken in *Thanh I*, in which Mrs. Minh, contrary to what Ngo was maintaining, stated that no such arrest and no such handcuffing actually took place. Thanh asserts that this deposition demonstrates that Ngo knew of the falsity of Ngo's email broadcast on October 2, 2011. *Id.*

The Court finds that, viewed in the light most favorable to Thanh, the Second Amended Complaint sufficiently alleges that Ngo personally published what might be fairly construed as derogatory statements about Thanh on October 2, 2011. Assuming that these statements were in fact published, the Court finds it plausible that specific accusations of cheating business owners and/or of arbitrarily causing individuals to be arrested when in fact they were not arrested would expose a person so accused to public scorn, and would discourage others in the community from or associating with that person. At this stage, therefore, the Court declines to hold as a matter of law that such statements, if proven, would not be highly offensive to a reasonable person. The

Court also finds it plausible that such statements, if proven, were not substantially correct, and that Ngo might even be found to have acted in reckless disregard of that falsity.

Accordingly, the Court **DENIES** Ngo's Motion to Dismiss Thanh's false light claim as to the October 2, 2011 broadcast.

### F.

In her Motion for a More Definite Statement, Ngo argues that the Second Amended Complaint is so confusing and so saturated with argument and recitation of extraneous matters that it is impossible for her to file a meaningful answer in accordance with Federal Rule of Civil Procedure 8(b). The Court shares Ngo's concerns; the Second Amended Complaint is hard to follow. However, in light of the very substantial narrowing of the claims in this case which the Court has just accomplished, *i.e.* it is limited solely to the October 2, 2011 event, which in turn concerns one mass email apparently already in Ngo's possession, the Court finds that a more definite statement of the claim is not necessary. Accordingly, Ngo's Motion for a More Definite Statement is **DENIED**.

### G.

A final word—for now. The Court has had considerable difficulty wading through the records in *Dai Chung I*, *Dai Chung II*, *Thanh I*, and *Thanh II*. Henceforth, this case must proceed differently. Counsel are **DIRECTED** to adhere to the following guidelines in all future filings in this case.

When making any reference to any document in the record, counsel **SHALL** cite the title of the document at issue, <u>as well as</u> the relevant electronic case filing number (or, if the document has not yet been assigned an electronic case filing number, the exhibit number), <u>as well as</u> the relevant page number, <u>as well as</u> the relevant paragraph number (if applicable).

Characterizations of documents in the record, without accompanying pinpoint citations, will not be entertained.  If referencing a document contained in the record of another case (such as *Thanh I*), counsel **SHALL** so indicate. Any reference to a transcript of a hearing or deposition **SHALL** cite the date of the deposition and the page and line numbers of the relevant excerpt. Any citation to case authority **SHALL** quote the relevant language and specify the page number that contains the cited proposition. General references to a case, without an accompanying pinpoint citation, are unacceptable. For further guidance, counsel are directed to consult Rules B4.1.2 and B7.1.2-4 of *The Bluebook: A Uniform System of Legal Citation*.

A separate Order will **ISSUE**.

                                                                   /s/

                                      **PETER J. MESSITTE**
                              **UNITED STATES DISTRICT JUDGE**

**May 8, 2015**