## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **HOAI THANH** | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Civil No. **PJM 14-448** |
| | * | |
| **HIEN T. NGO** | * | |
| | * | |
| Defendant | * | |
| | * | |

## MEMORANDUM OPINION

The seemingly endless litigation between Plaintiff Hoai Thanh and Defendant Hien T. Ngo has now been whittled down to the present suit ("*Thanh II*") and a single remaining claim: false light/invasion of privacy arising from an article that Ngo purportedly published on the internet on October 2, 2011. The factual and procedural background of the case is detailed in the Court's Opinion in *Hoai Thanh v. Hien T. Ngo*, Civ. No. 11-PJM-1992 (May 8, 2015) ("*Thanh I*"). Ngo now moves for summary judgment, asserting that Thanh has fatally misstated the date of the publication, which undisputed evidence shows occurred at the latest in October 2007. As a result, says Ngo, Thanh has failed to allege the false light claim with adequate specificity, and in any event, she continues, the claim is barred by the statute of limitations. Thanh asserts that actual publication occurred in October 2011 and, regardless of the date of publication, that his suit is timely because the cause of action did not accrue until he discovered the publication in 2012.

For the following reasons, the Court will **GRANT** Ngo's Motion for Summary Judgment.

**I.**

In *Thanh I*, Thanh alleged he was attacked by Ngo on multiple fronts—defaming him, casting him in a false light, intimidating him, filing "baseless" lawsuits against him—all in retaliation after Thanh published accusations against Ngo in his newspaper, *Dai Chung*, to the effect that Ngo was misusing charitable funds.   On November 27, 2013, in *Thanh I*, Thanh moved to amend his Complaint to add further claims of defamation and false light.   The Court denied the motion as too late to be filed in that suit, but did grant Thanh leave to file a separate lawsuit alleging any cause of action included in the motion to amend that was not already part of *Thanh I*.   *See* Order of January 14, 2014 at 2, *Thanh I*, ECF No. 105.   The case currently pending before the Court, *Thanh II*, is that separate lawsuit.[1]

The Complaint in the present case was filed February 14, 2014.   ECF No. 1.   After the Court twice gave Thanh leave to amend, it granted Ngo's Motion to Dismiss as to all but a single claim: Count I-A of the Second Amended Complaint alleging false light/invasion of privacy arising from an article Ngo purportedly published in Vietnamese on the internet on October 2, 2011.   *See* Memo. Op. at 11-15 (May 8, 2015), ECF No. 16.

Thanh alleges in this claim that on October 2, 2011, Ngo "published on Google on the Internet what was a republishing of a document that she had repeatedly used previously in her broadcasts and also on the Internet," which, Thanh says, placed him in a false light.   Second Amend. Compl. ¶ 63, ECF No. 9-2.   Thanh goes on to explain that "this republishing was not discovered by him despite his diligence until another Vietnamese person called it to his attention just a few days before he was deposed by the defendant's counsel for the first time in [*Thanh I*]

---

[1] All claims in *Thanh I* went out on Summary Judgment in favor of Ngo by Memorandum Opinion and Order issued on May 8, 2015.   *See Thanh I*, ECF Nos. 147, 148.

on April 6, 2012,[2] at which time the plaintiff gave a copy of that blast email to the defendant[.]"
*Id.*

The Second Amended Complaint cites a number of sections from the publication (translated from Vietnamese) as examples of false light which purportedly state or imply that Thanh is "a communist or is under the control of the hated communist government in Vietnam, . . . is too stupid to run a newspaper, [and] that [his] newspaper lied and misled the public." *See* Second Amended Compl. ¶ 64, ECF No. 9-2 ("Thanh, who is mainly an auto body shop repairer holding screws and painting guns, not a pen holder, but wants to be known as an intellectual; and for this purpose, hired an overseas student from VN today to run his newspaper.").  Other quoted passages state that Thanh is a "cheater," an "infidel," and bankrupt. Second Amended Compl. ¶ 66 ("Mr. Hoi Thanh has cheated [a particular business owner] $10,000. [ . . . ] But fooled up by Mr. Hoai Thanh the infidel man, [the business owner] sued Mr. Hoai Thanh even though Hoai Thanh's wife pretended to lose consciousness in the court and Hoai Thanh has filed bankruptcy.").

The Second Amended Complaint also quotes a passage from the October 2, 2011 publication which Thanh alleges falsely calls him a "crook" in his dealings with a Mrs. Minh, a woman to whom Thanh supposedly owed a debt. The quoted passage states that "Mrs. Minh [ . . . ] voluntarily phoned me [Ngo] at will to retell me [Ngo] how she had lent Mr. Hoai Thanh money."  Second Amended Compl. ¶ 65.  The publication purportedly goes on to say that, when Mrs. Minh went to Thanh's house to collect her debt, Thanh called the police to have her arrested. Minh was said to have been handcuffed, arrested, and later set free on bond.  *Id.*  Thanh

---

[2] As Ngo points out, the correct date is actually August 2012, as Thanh testified in his August 22, 2012 deposition.  Def.'s Reply at 4 n.2, ECF No. 24; Def.'s Ex. 7, Aug. 22, 2012 Thanh Depo. 153:7–12, ECF No. 21-8.  The Court will assume Thanh intends to assert the later date of August 2012, since it is more advantageous to him for the purposes of his limitations argument.

asserts Ngo knew of the falsity of the statements in the article: specifically, he references a deposition of Minh taken in *Thanh I*, in which Minh, contrary to what Ngo was maintaining, stated that no such arrest and no such handcuffing actually took place.

In ruling on Ngo's Motion to Dismiss in the present case, the Court determined that the false light claim, when viewed in the light most favorable to Thanh, sufficiently alleged that Ngo personally published what might be fairly construed as derogatory statements about Thanh on October 2, 2011.  Memo. Op. at 11-15, ECF No. 16. While the Court found this allegation of false light plausible, it declined to hold as a matter of law that such statements would be highly offensive to a reasonable person.

In addition, because Maryland's statute of limitations for false light claims is three years, the Court concluded that Thanh's <u>false light claim</u> for the supposed October 2, 2011 publication appeared to be timely, whether calculated from the date Thanh moved to amend his complaint in *Thanh I* (November 27, 2013) or from the date *Thanh II* was filed (February 14, 2014).  *See* Memo. Op. at 6-7.  On the other hand, the Court granted Ngo's Motion to Dismiss as to Thanh's <u>defamation claim</u> with respect to the October 2, 2011 broadcast, because it fell outside of Maryland's one-year statute of limitations for defamation claims.

The Court now considers Ngo's Motion for Summary Judgment on the remaining false light claim.  Ngo argues that there can be no genuine dispute that Ngo did not, in fact, publish any article on October 2, 2011.  Instead, she says, the undisputed evidence demonstrates that she posted the article to an online discussion group no later than 2007, and thereafter some third party posted the article to the Tin Paris website, a Vietnamese-language online magazine, in October or November 2007.  Ngo has presented evidence that Thanh's copy of the article with the date October 2, 2011 is, in fact, a Google cache or "snapshot" of the Tin Paris website, to

which the article was posted in 2007. Def.'s Mot. Summ. J. at 5–7, ECF No. 21-1. On this basis, Ngo argues that Thanh has failed to present sufficient evidence that she published any statements at all on October 2, 2011, much less false light statements. Further, his claims are barred by the statute of limitations because, as a matter of law, the discovery rule does not apply to false light statements published in mass media. Def.'s Reply Mot. Summ. J. at 6-9, ECF No. 24.

Thanh argues in response that he is not an IT expert, and it is a question of fact "whether or not the defendant published this material." Pl.'s Resp. Opp'n Mot. Summ. J. at 1-2, ECF No. 23. Further, Thanh believes that whether the statute of limitations should render his claim untimely is a question of fact, based on "whether the plaintiff discovered it when he did was reasonable under the circumstances." *Id.* at 2. Thanh's sole evidentiary support consists of an affidavit from himself alone, in which he states that Ngo "republished" the article many times "throughout October and November of 2011" but he (Thanh) only became aware of the article "after another person brought it to his attention." Pl.'s Resp. Opp'n Mot. Summ. J., Ex. 1, Thanh Aff. ¶¶ 9–10, ECF No. 23-1.

## II.

A court may grant summary judgment pursuant to Federal Rule of Civil Procedure 56(a) only when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. Fed. R. Civ. Pro. 56(a); *see Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is one "that might affect the outcome of the suit under governing law." *Libertarian Party of Va.* v. *Judd*, 718 F.3d

308, 313 (2013) (quoting *Anderson*, 477 U.S. at 248).   Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

This inquiry requires the court to view the record "in the light most favorable to the party opposing the motion" and to draw all reasonable inferences in that party's favor.   *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 248 (4th Cir. 2015).   Nevertheless, "it is ultimately the nonmovant's burden to persuade [the court] that there is indeed a dispute of material fact." *CoreTel Va., LLC v. Verizon Va.*, LLC, 752 F.3d 364, 370 (4th Cir. 2014) (citation omitted). The burden on the nonmoving party extends to establishing a genuine issue of material fact on each essential element of its case.   *Anderson*, 477 U.S. at 248–49; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   Thus, a party opposing the motion may not defeat summary judgment by relying on a mere "scintilla of evidence" or by means of mere conclusory allegations or speculation.   *Anderson*, 477 U.S. at 251; *see Am. Arms Int'l v. Herbert*, 563 F.3d 78, 82 (4th Cir. 2009).   Further, he "'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003).

### III.

Ngo moves for summary judgment on a narrow ground: while accepting that she was the author of the article in question, she argues that the only time she posted the statements in question was to an online discussion group sometime in 2007.   She denies any posting to the Tin Paris website or reposting by her thereafter and Thanh, she submits, has offered no evidence to

the contrary. Thus, says Ngo, there is no genuine dispute that she did not publish the defamatory statements in question on October 2, 2011 and she is entitled to judgment as a matter of law.

## A.

In Maryland,[3] the elements of a claim of false light/invasion of privacy are as follows: (1) publicity in a false light before the public; (2) which a reasonable person would find highly offensive; and (3) which the actor had knowledge of or as to which he or she acted in reckless disregard of the fact that the publicized matter would place the plaintiff in a false light. *Cambridge Title Co. v. Transamerica Title Ins. Co.*, 817 F. Supp. 1263, 1278 (D. Md. 1992) *aff'd*, 989 F.2d 491 (4th Cir. 1993); *see Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md. App. 470, 514, 665 A.2d 297, 318 (Md. Ct. Spec. App. 1995) (citing Restatement (Second) of Torts § 652E (1977)).

An allegation of false light must meet the same legal standards as an allegation of defamation. *Piscatelli v. Van Smith*, 424 Md. 294, 306 (Md. 2012). In order to present a *prima facie* case of defamation in Maryland, a plaintiff must allege specific facts establishing the following four elements: (1) that the defendant made a defamatory statement to a third person,

---

[3] The parties appear to agree that Maryland law applies to the present suit. Maryland follows the principle of *lex loci delicti commissi*, the law of the place of the harm, in the context of tort claims. *See Naughton v. Bankier*, 114 Md. App. 641, 691 A.2d 712, 716 (Md. Ct. Spec. App. 1997). "In defamation actions, the place of the harm has traditionally been considered to be the place where the defamatory statement was published, i.e., seen or heard by non-parties." *Wells v. Liddy*, 186 F.3d 505, 521–22 (4th Cir. 1999) (applying Maryland choice-of-law rules to determine that the substantive law of Virginia applied to the defamation claims); *see Fornshill v. Ruddy*, 891 F. Supp. 1062, 1069 (D. Md. 1995), *aff'd*, 89 F.3d 828 (4th Cir. 1996) ("[In] multistate defamation . . . the state of most significant relationship will usually be the state where the person was domiciled at the time, if the matter complained of was published in that state." (quoting Restatement (Second) of Conflict of Laws (1971 & Supp. 1995))). Thanh is domiciled in Virginia, and could conceivably argue—but does not—that he was harmed when the Vietnamese community residing in his home state first read the statements online. However, were the Court to apply Virginia law, the claim would fail: there is no cognizable cause of action for false light in Virginia. *See WJLA-TV v. Levin*, 264 Va. 140, 160 & 160 n.5, 564 S.E.2d 38 (Va. 2002). Further, any such claim would be barred by the statute of limitations, given that Virginia does not apply the discovery rule to defamation claims. *See Bass v. E.I. Dupont De Nemours & Co.*, 28 F. App'x 201, 206 (4th Cir. 2002) (citing *Jordan v. Shands*, 255 Va. 492, 498, 500 S.E.2d 215 (Va. 1998)).

(2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm.  *Id.*; *see Offen v. Brenner*, 402 Md. 191, 198, 935 A.2d 719, 723 (Md. 2007).  A defamatory statement is one "which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or from associating or dealing with, that person." *Batson v. Shiflett*, 325 Md. 684, 722–23, 602 A.2d 1191, 1210 (Md. 1992).  The plaintiff bears the burden of proving the falsity of the statement, or that the statement "is not substantially correct."  *Piscatelli*, 424 Md. at 306.

As the Court observed in its May 8, 2015 opinion in *Thanh II*, "the Fourth Circuit has clearly held that a 'plaintiff may not baldly allege a broad course of conduct over a lengthy period of time and later sue on any act that occurred during that time period.'" *Gainsburg v. Steben & Co.*, 838 F. Supp. 2d 339, 344 (D. Md. 2011), *aff'd*, 519 F. App'x 199 (4th Cir. 2013) (quoting *English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, 172 F.3d 862 (table), 1999 WL 89125 at *3 (4th Cir. 1999).  Instead, "[e]very alleged defamatory statement constitutes 'a separate instance of defamation,' which 'a plaintiff must specifically allege.'"  *Id.* (quoting *English Boiler & Tube, Inc.*, 1999 WL 89125 at *3 (applying North Carolina law)).

Under what is known as the single publication rule, "only one action for damages can be maintained as to any single publication" of the defamatory article at issue.  *Hickey v. St. Martin's Press, Inc.*, 978 F. Supp. 230, 235 (D. Md. 1997) (determining that the Maryland Court of Appeals would adopt the single publication rule if presented with the issue).  As a result, courts that follow the single publication rule reject the proposition that "every sale or delivery of the defamatory article" creates an independent cause of action.  *Id.*  That said, while "[a]ny one edition of a book or newspaper, or any one radio or television broadcast . . . is a single

publication," a second edition of a book or article or a second broadcast by the same defamer is considered a separate publication. Restatement (Second) of Torts § 577A (1977). As explained by this Court in *Hickey*, "[t]he great majority of the states now follow the single publication rule," 978 F. Supp. at 236, because it "'serves to protect defendants from harassment resulting from multiple suits.'" *Id.* (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777 n.8, 104 S. Ct. 1473, 1480 n.8, 79 L.Ed.2d 790 (1984)). Further, the rule better "reflects the facts of modern-day mass publishing and duplicating and gives effect to the policy of repose underlying the statute of limitations." *Id.* (internal quotation marks and citation omitted).

As a general rule, the original author or publisher of a defamatory statement is not held liable "for a voluntary and unauthorized repetition or republication of the defamatory matter by others who act independently[.]" *Shepard v. Nabb*, 84 Md. App. 687, 698, 581 A.2d 839, 844 (Md. 1990) (internal quotation marks and citations omitted); *accord Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1087 (D.C. Cir. 2007) (finding no liability for defendant for a third party's posting of the statement elsewhere on the internet). An exception to the rule of non-liability for the author, however, arises where "republication by others is the natural and probable consequences" of the original act of publication, but "the burden is on the plaintiff to show that such exception to the general rule exists." *Shepard v. Nabb*, 84 Md. App. at 698 (internal quotation marks and citations omitted).

## B.

Ngo submits that, because Maryland follows the single publication rule, Thanh is obliged to present sufficient evidence to sustain his burden demonstrating that the article was <u>published</u>, rather than merely <u>available</u>, on October 2, 2011. In fact, says Ngo, the only evidence before the Court demonstrates that the article's date of the publication occurred no later than November

2007; there is no evidence that any publication by Ngo of the article occurred on October 2, 2011.

The Second Amended Complaint alleges that "[o]n October 2, 2011, the defendant published on Google on the Internet what was a republishing of a document that she had repeatedly used previously in her broadcasts and also on the Internet." *Id.* ¶ 63.  The parties are in agreement that the offensive article at issue is Thanh's Exhibit 4 from the August 22, 2012 Deposition in *Thanh I*, which will be referred to as the October 2, 2011 "Google Cache."  Def.'s Mot. Summ. J., Ex. 4, "Google Cache," ECF No. 21-5; *see also* Def.'s Ex. 1, Pl.'s Answer to Def.'s 2d Interrogs. Nos. 19–20, ECF No. 21-2. The text of the document is in Vietnamese, but the following text at the top of the document appears in English:

> This is Google's cache of http://www.tinparis.net/thoisu/1107_23_NgothiHien ChongCSVN.html. It is a snapshot of the page as it appeared on Oct 2, 2011 at 00:44:37 GMT. The current page could have changed in the meantime. Learn more.
> Text only version.
> These search terms are highlighted: ngo thi hien

*Id.*; *see also* Def.'s Ex. 3, Certified Translation of Cached Vietnamese Document, ECF No. 21-4. According to the report of Ngo's expert, Jason Newman, the co-founder of Advantage Industries—a company specializing in web page design and technical network systems design, implementation, and maintenance—a Google "cache" is made through Google's practice of "regular[ly] scanning the internet for the purpose of saving images of web pages." Def.'s Mot. Summ. J., Ex. 2, Newman Report at 2, ECF No. 21-3.  These saved pages are "cached" or stored web pages, which "serve as a backup in case the current page being sought by an internet user is not available."  *Id.*  The report states that the date, October 2, 2011, means that the Vietnamese text was "visible on the internet" on that date, when Google saved the image of the web page.

*Id.* The date does not indicate that the web page was uploaded, posted, or published on that date. *Id.* at 2–3.

Indeed, Ngo avers in an affidavit that she published the article in October 2007 by posting it to Vietnamese language discussion groups or newsgroups on the internet—but not to the "TinParis.net" webpage captured in the Google Cache. Def.'s Mot. Summ. J., Ex. 5, Ngo Aff. ¶¶ 10–13, ECF No. 21-6.   Ngo states that she had no control over TinParis.net or the content of the site, and did not post the article there herself. Nor did she publish or republish the article anytime thereafter. *Id.* ¶¶ 12–13.

Ngo's statements are supported by an Affidavit from Christopher Butler, the office manager at an organization called Internet Archive, which maintains a digital library of internet sites.  Butler states that he was able to determine that Ngo's article was available on TinParis.net no later than November 28, 2007.  Def.'s Mot. Summ. J., Ex. 6, Butler Aff., ECF No. 21-7. Using his organization's "Wayback Machine," which searches billions of pages that were captured and automatically stored on the organization's archive, he found the internet archive of the TinParis.net article in question.  *Id.* ¶¶ 3–6; *see* Ex. A to Butler Aff., ECF No. 21-7.  The page with Ngo's article on the Tin Paris website shows a code in the URL, which is the date of capture: "20071128013627".  Ex. A to Butler Aff., ECF No. 21-7.   This refers to a capture date of 11/28/2007 and a time stamp of 01:36:27 a.m.  *See* Ex. 6, Butler Aff. ¶ 5; Ex. 2, Newman Report at 3. The captured webpage in Exhibit A to the Butler Affidavit also shows the actual web address of TinParis.net: http://www.tinparis.net/thoisu/1107_23_NgothiHienChong CSVN.html, which is identical to the web address cached by Google.  *See* Ex. 2, Newman Report at 3.  Ngo's affidavit also avers that the Vietnamese language in the captured version of TinParis.net found

by Butler is identical to Thanh's Google Cache copy. *See* Ex. 5, Ngo. Aff. ¶ 4, 11, ECF No. 21-6.

Ngo concludes that this evidence irrefutably demonstrates that she did not post an article on October 2, 2011 but instead that the article was already available on the Tin Paris website at latest in November 2007.

Other record evidence establishes that Thanh actually *knew* the article was published in October 2007, because in the Second Amended Complaint he alleges a "republication" date of October 2, 2011. Second Amend. Compl. ¶ 63 ("On October 2, 2011 the defendant published to Google on the Internet what was a <u>republishing</u> of a document that she had repeatedly used previously in her broadcasts and also on the Internet . . . this <u>republishing</u> was not discovered by him despite his diligence. . . ."). This conclusion is further supported by Thanh's deposition on August 22, 2012 in *Thanh I*, in which Thanh could not have been clearer that he was aware of the publication in 2007:

> Q: [Mr. Gallagher]: I show you what we have had marked as Exhibit 4. Can you tell me what that is, please?
> A: [Thanh]: This is the articles was written by Ms. Hien [Ngo] addressing to the president of Vietnam and the Prime Minister of Vietnam and <u>she submitted to Google which later was reprinted by Tin Paris</u>, make false accusations of me about many wrongdoings.
> …
> Q: Okay. How did the lawsuits [filed by Ngo] force you to close Dail Chung Newspaper?
> A: She sue me and she bring me with false accusations on the public media that prevent a lot of people to advertise with us. And she also mention specific <u>here</u> that she will sue me until I had to close the Dial Chung Magazine . . . .
> Q: But when you say here, you are talking about Exhibit Number 4 [the article on TinParis.net]?
> A: Yes
> Q: That was in <u>2007</u>?
> A: Yes, that's true.

Def.'s Mot. Summ. J. Ex. 7, Thanh Depo. 152:21–153:6, 201:18–202:9, ECF No. 21-8 (emphasis added).

-12-

Finally, even an English-speaking, non-Vietnamese speaking reader can deduce from the Google cache that the date of publication on the Tin Paris website was October 27, 2007, since it says at the very beginning of the article: "Washington ngay 27 thang 10, 2007"; that is, "Washington[.] October 27, 2007."   Def.'s Mot. Summ. J., Ex. 4, "Google Cache" at 1, ECF No. 21-5.

Thanh's short affidavit provided in response is tepid at best; he does not appear to dispute any of the facts demonstrated by Ngo's Exhibits related to the Google Cache.   *See* Pl.'s Resp. Opp'n Mot. Summ. J., Ex. 1, Thanh Aff., ECF No. 23-1.   Thanh says only that he worked diligently to find articles Ngo posted online but nevertheless did not learn about the article in question until "another person brought it to his attention," as he "set out in his complaint."   *Id.* ¶ 10.  Thanh also states in his affidavit that he wrote to the Tin Paris.net and VanTuyen.net[4] to take the article down.   *Id. ¶¶* 8, 11-14.   After merely asserting the article was published "over and over," *id.* ¶ 3, his only response to Ngo's evidence is that the date the article was uploaded— whether October 2, 2011 or not—is an issue of fact for the jury.  Pl.'s Resp. Opp'n Mot. Summ. J. at 2. His response in opposition concludes that "the plaintiff is not an IT expert; he believes that when something is stated to have been "archived" on a date[,] it was archived on that date." *Id.* at 1.

Thanh's arguments simply do not pass muster.   As the party opposing the motion for summary judgment, he "may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Bouchat*, 346 F.3d at 525 (internal quotation marks and citations omitted). Merely stating that he disagrees with Ngo's evidence does not create a genuine issue of fact; Thanh must present more than a "scintilla of evidence" and more than conclusory allegations to defeat the motion for summary

---

[4] Curiously, Thanh did not mention VanTuyen.net in his original or either Amended Complaints.

judgment.  *See Am. Arms Int'l*, 563 F.3d at 82.  As to the date of publication, he has failed to do so.

Having reviewed the record evidence presented, the Court has no hesitation in concluding that no genuine dispute exists that the article in question was, in fact, published and available on TinParis.net at the latest in November 2007, and that the Google Cache document merely demonstrated the availability online—rather than the actual republication by Ngo—of the article on October 2, 2011.

The Court considers a second publication theory, in that Thanh also appears to allege that Ngo "republished" the article in or around October 2, 2011, by means of sending the article out in a mass email.  While Thanh in the Second Amended Complaint he refers to October 2, 2011 as a "republishing" date on which Ngo purportedly posted the article online, he also refers to the October 2, 2011 article as an "email blast."  *See* Second Amend. Compl. ¶ 63; *see also* Def.'s Mot. Summ. J. at 11–12 (citing Pl.'s Answer Def.'s Interrog. No. 8 (referring to "the October 2, 2011 blast email")).  Thanh appears to be saying that publication by Ngo occurred not only over the internet but also in emails she sent.

Although Thanh's allegations that Ngo sent out defamatory mass emails appear in separate counts that the Court has already dismissed, he has not clearly made this allegation in Count I-A.  *See id.* at ¶ 70 (alleging in Count 1-B, "[o]n April 8, 2011, and, again, on April 18, 2011, the defendant . . . sent out 'blast' emails to tens of thousands of members of the Vietnamese speaking community").  The only reference to "blast emails" in Count I-A is that at Thanh's deposition, purportedly on April 6, 2012, he "gave a copy of the blast email to the defendant . . . by handing it to her counsel."  *Id.* ¶ 63.  But the parties agree that the document

Ngo's counsel received at the deposition (which in fact took place on August 22, 2012) was the October 2, 2011 Google Cache.  Def.'s Mot. Summ. J. Ex. 1, Interrogs. 19–20, ECF No. 21-2.

Thanh also refers to the October 2, 2011 Google Cache document as a "blast email" in his responses to interrogatories. When Ngo requested through an interrogatory "the facts known to [Thanh] that indicate that the statement was published on October 2, 2011," Thanh responded that: "The blast email states that that [date] was when it was published on the Internet . . . I was told about the October 2, 2011 blast email by others before I myself saw it. . . . When I saw it myself I saw that it said right on it that it was posted on October 2, 2011." [5]  Def.'s Mot. Summ. J. at 11–12 (quoting Pl.'s Answer Def.'s Interrog. No. 8).

However, there is nothing in the Google Cache itself indicating that it was in some way part of an email.  *See* Def.'s Mot. Summ. J., Ex. 4, Google Cache at 1, ECF No. 21-5.  Further, when Ngo's counsel asked at Thanh's August 22, 2012 deposition where he got the Google Cache, he failed to mention an email or that he heard about it from another person, explaining, "I accidentally visited Tin Paris.com and found out about it, just recently . . . [in]  early August this year."  Def.'s Ex. 7, Aug. 22, 2012 Thanh Depo. 153:8–10.

---

[5] The relevant interrogatory in full states as follows:

> INTERROGATORY NO. 8: With respect to the October 2, 2011 Publication, state all of the facts known to you that indicate that the statement was published on October 2, 2011.

> PLAINTIFF'S ANSWER: The blast email states that that was when it was published on the Internet and the posting notice says that it was and the man that gave it to me stated that that's when it was published. I was told about the October 2, 2011 blast email by others before I myself saw it. One of those who told me about it was Mr. Sagant Phan of California, who is mentioned in my answer to number 1 above. There were 3 or 4 other Vietnamese from this area who also told me about it before I myself saw it. All of them described it as another copy of the blast email attacking me that the defendant had sent out over and over again. When I saw it myself I saw that it said right on it that it was posted on October 2, 2011.

Def.'s Mot. Summ. J. at 11–12 (quoting Pl.'s Answer Def.'s Interrog. No. 8)

But if Thanh does, in fact, intend to assert republication of the internet article in question as an email, he has offered no evidence that Ngo actually sent such an email containing the article—not even an affidavit from the person who purportedly first alerted him to the existence of the email.[6]  During the hearing on the motion for summary judgment, Thanh's counsel, in response to the Court's question as to why he did not present evidence refuting that the Google Cache was not a new publication, appeared to argue that it was sent out in an email, but also suggested that he did not need to present evidence of the existence of the alleged email. *See* H'rg Tr. 47:5–8, ECF No. 27 ("You don't need an expert to say people can put out blast e-mails any time they want . . . . Everybody knows how to use e-mails).[7]

If Thanh intends to rely on theory that the article was "republished" by means of an email, he must not only clearly present this argument to the Court, but also provide *some* evidence to support the proposition. But on the record before the Court, there is no evidence— which is to say no genuine dispute—that any emails were sent containing the article in question.

The question, then, is whether Thanh's failure to allege the correct date of publication by some four years is fatal as a matter of law to his false light claim under Count I-A.  Although Ngo admits writing the purportedly defamatory article in 2007, she argues that she is nonetheless entitled to judgment as a matter of law, because, in effect, Thanh's false light claim based on an

---

[6] At the hearing on the Motion for Summary Judgment, counsel for Thanh claimed that he was unable to obtain evidence of emails sent by Ngo from Google or AOL, because those companies responded that "when [Ngo] destroyed the e-mails, they were destroyed on the servers." H'rg Tr. 44:10–11, ECF No. 27. However, until then, Thanh had never previously raised any issue of spoliation as to these alleged mass emails, nor has he at any time produced to the Court a shred of evidence of the emails from any other source.

[7] Ngo's counsel noted that Thanh's only request for discovery consisted of untimely interrogatories: "The only . . . discovery requests that we received in this case were interrogatories that came to us outside the deadline for serving interrogatories. And I took a hard position on that and I told Mr. Elgin [Thanh's counsel] we were not going to answer them . . . And he conceded the point."  H'rg Tr. 50:6–16, ECF No. 27.

alleged October 2, 2011 internet posting has no grounding in fact.  Def.'s Mot. Summ. J. at 1–2, 9, 14–15, ECF No. 21.

The Court agrees that, under the single publication rule, the October 2, 2011 Google Cache of the article does not constitute an actionable publication of the article.  Thanh's discovery of the Google cache, as well as his discovery of the article through various search engines, amount to nothing more than another "sale or delivery of the defamatory article" under the single publication rule.  *See Hickey*, 978 F. Supp. at 235.  Although he argues that "[f]alse light is systematic and ongoing," he cannot rely on a theory of continuing course of conduct or harm.  *See Gainsburg,* 838 F. Supp. 2d at 344 ("'[A] plaintiff may not baldy allege a broad course of conduct over a lengthy period of time and later sue on any act that occurred during that time period.'" quoting *English Boiler & Tube, Inc.*, 1999 WL 89125 at *3).[8]

While Thanh might have cured this fatal defect as to the date of the publication earlier in the litigation, it is well past the time for amendments.  The operative complaint is now the Second Amended Complaint since the suit was filed on February 14, 2014.  Recall, too, that Thanh first attempted to bring the claims in this suit in *Thanh I*, but the Court deemed Thanh's November 27, 2013 motion to have come far too late in those proceedings to permit him to amend his complaint once again.  Further, as there is no dispute from record evidence that Thanh was aware well before this suit was filed that the original publication date of article was October

---

[8] Thanh also fails to present evidence that a republication by a third party occurred after 2007,  nor does he provide any argument as to why the Court should deviate from the general rule that the original author of the defamatory statement incurs no liability for republications by independent third parties.  *See Shepard v. Nabb*, 84 Md. App. 687, 698, 581 A.2d 839, 844 (Md. 1990)  (internal quotation marks and citations omitted); *accord Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1087 (D.C. Cir. 2007) (finding no liability for defendant for a third party's posting of the statement elsewhere on the internet).

2007, there is no reason he could not have alleged the correct publication date in one of his previous opportunities to amend his complaint.[9]

Since there is no evidence that any false light statements by Ngo occurred on October 2, 2011, or indeed within several years of that date, the Court finds that Ngo is entitled to summary judgment as a matter of law.

## C.

Furthermore, the Court concludes that Thanh's claim of false light based on the article published in 2007 is barred by the statute of limitation because the discovery rule does not apply.

The Maryland Court of Special Appeals has held that the applicable limitations period for a false light claim is three years. *See Allen v. Bethlehem Steel Corp.*, 76 Md. App. 642, 649, 547 A.2d 1105 (Md. Ct. Spec. App. 1988) (construing Md. Code Ann., Cts. & Jud. Proc. § 5-101).

Limitations ordinarily run from the time the defamatory statement—and by application, the false light statement—is published. *See Interphase Garment Solutions, LLC v. Fox Television Stations, Inc.*, 566 F. Supp. 2d 460, 464 (D. Md. 2008) ("A defamation claim is complete when the allegedly defamatory statement is [made] because the injury to reputation is immediate.") Maryland, however, generally follows the discovery rule in tort actions, which provides that "a cause of action accrues when the plaintiff 'knew or reasonably should have known that the defendant committed a wrong act. . . .'" *Id.* (citing *Sears, Roebuck and Co. v. Ulman*, 287 Md. 397, 401, 412 A.2d 1240 (Md. 1980)); *see also Hecht v. Resolution Trust Corp.*,

---

[9] Ngo further asserts that any amended claim based on the 2007 publication would now be barred by the three year statute of limitations, even assuming limitations accrued when Thanh discovered the article in August 2012. Def.'s Reply at 8 n.3, ECF No. 24. Because every publication constitutes a single cause of action under the single publication rule, Ngo argues, the 2007 publication would not relate back to the filing of the original complaint under Federal Rule of Civil Procedure 15(c). Fed. R. Civ. P. 15(c) ("An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]"); *see Gainsburg*, 838 F. Supp. 2d at 344 (citing *English Boiler & Tube, Inc.*, 1999 WL 89125 at *3).

333 Md. 324, 334, 635 A.2d 394, 399 (Md. 1994) ("Recognizing the unfairness inherent in charging a plaintiff with slumbering on rights not reasonably possible to ascertain, this Court adopted what is known as the discovery rule, which now applies generally in all civil actions[.]") The Maryland Court of Appeals has, in some cases, applied the discovery rule to defamation claims. *See Sears, Roebuck and Co. v. Ulman*, 287 Md. 397, 401, 412 A.2d 1240 (Md. 1980) (holding that the discovery rule applied where plaintiff "could not reasonably have been expected to know[] that Sears had filed a false credit report with the credit agency"); *see also McClure v. Lovelace*, 214 Md. App. 716, 741, 78 A.3d 934, 949 (Md. Ct. Spec. App. 2013), *aff'd sub nom. Amalgamated Transit Union v. Lovelace*, 441 Md. 560, 109 A.3d 96 (Md. 2015).

Thanh submits that the discovery rule should apply here, such that his false light action should be deemed not to have accrued until "another Vietnamese person called [the article] to his attention just a few days before he was deposed" on April 6, 2012, Second Amend. Compl. ¶ 63, (although the Court has accepted, per Thanh's deposition testimony, that the correct date of the purported discover was actually just before his August 22, 2012 deposition). Thanh asserts that whether he was reasonably diligent in discovering the article is an issue for the jury. Pl.'s Resp. Opp'n Mot. Summ. J. at 2, ECF No. 23.

Ngo counters that whether Thanh was "reasonably diligent" is not a material fact in this case. Under Maryland law, the plaintiff is generally charged with knowledge of a cause of action as of the date of publication, provided that the alleged defamatory publication is made by way of mass media. Def. Reply at 6–7, ECF No. 24.

This Court has previously held that under Maryland law, where "articles were widely available online and could have been discovered immediately, the statute of limitations began to accrue on the date the articles were published." *Tani v. Washington Post*, No. PJM 08-1130,

2009 WL 8652384, *2 (D. Md. June 18, 2009), *aff'd*, 352 F. App'x 792 (4th Cir. 2009); *see also Shepard v. Nabb*, 84 Md. App. 687, 696, 581 A.2d 839, 843 (Md. 1990) (holding that the action for defamation accrued on the date of publication where there is nothing in the record to indicate that plaintiff reasonably should not have known of the defendant's remarks to the reporter on the date the article was published).   Because a plaintiff always "reasonably should have known" about purportedly defamatory statements made in mass media as of the time of publication, the "prevailing view is that libel claims relating to articles published in widely available sources begin to accrue on the date of publication."   *Tani*, 2009 WL 8652384 at *2; *see Interphase Garment Sols., LLC v. Fox Television Stations, Inc.*, 566 F. Supp. 2d 460, 464 (D. Md. 2008); *accord Mullin v. Washington Free Weekly, Inc*., 785 A.2d 296, 297 (D.C. 2001) ("[E]very other court squarely faced with this issue [has] reject[ed] application of the discovery rule in mass media defamation claims) (collecting cases); *Shively v. Bozanich*, 31 Cal. 4th 1230, 1250, 7 Cal. Rptr. 3d 576, 80 P.3d 676 (Cal. 2003) ("[C]ourts uniformly have rejected the application of the discovery rule to libels published in books, magazines, and newspapers, pointing out that application of the discovery rule would undermine the protection provided by the single-publication rule."); *cf. Schweihs v. Burdick*, 96 F.3d 917, 921 (7th Cir. 1996) ("[C]ourts seem to apply the discovery rule in situations where the defamatory material is published in a manner likely to be concealed from the plaintiff"); *Bradford v. Am. Media Operations, Inc.*, 882 F. Supp. 1508, 1519 (E.D. Pa. 1995).[10]

---

[10] The question of the accrual of the statute of limitation is left to judicial determination, and "may be based solely on law, solely on fact, or on a combination of law and fact, and is reached after careful consideration of the purpose of the statute and the facts to which it is applied." *Frederick Road Ltd. Partnership v. Brown & Sturm*, 360 Md. 76, 756 A.2d 963, 973 (Md. 2000).  In general, it is often a question of fact for the jury whether the plaintiff exercised due diligence despite his failure to discover his cause of action. *See id.* at 974.  Nevertheless, the "prevailing view" that the discovery rule does not apply to defamatory statements published in mass media often eliminates this factual dispute.

The question, then, is whether Ngo's article, posted on the Tin Paris website, should be considered mass media and "widely available online," such that Thanh reasonably should have known of its existence at the time it was posted.[11] *Tani*, 2009 WL 8652384 at *2 (citing *Shepard v. Nabb*, 84 Md. App. at 696). Since Maryland courts have not addressed the issue, "this Court must apply a rule which it reasonably believes would be adopted by the Maryland Court of Appeals." *Hickey*, 978 F. Supp. at 236 (citing *Kirby v. Chrysler Corp.*, 554 F. Supp. 743, 749 (D. Md. 1982).

The Court sees no reason to deviate in this case from the usual rule that a plaintiff is charged with knowing about defamatory statements made in mass media at the time of the first broadcast.  In general, publications on the Internet—as well as the use of search engines such as Google, which have enabled users to find specific online content with relative ease—have, if anything, reduced the difficulty victims faced in the context of printed newspapers, book, and articles in discovering specific defamatory statements. *Accord Wolk v. Olson*, 730 F. Supp. 2d 376, 378 (E.D. Pa. 2010) ("If the [discovery] rule is intended for hard-to-discern injuries, it would be at odds with a cause of action based upon a defamatory statement disseminated through a mass medium, like a website, and received by tens of thousands of readers.") (emphasis added); *Phillips v. World Pub. Co.*, 822 F. Supp. 2d 1114, 1122 (W.D. Wash. 2011) ("In the internet context, the statute of limitations begins to run when the allegedly infringing material is first posted on the internet.") (citing *Canatella v. Van De Kamp*, 486 F.3d 1128, 1134–36 (9th

---

[11] Whether the Court should date the statute of limitations from Ngo's purported original posting in the discussion group or a third party's posting on TinParis.net is merely academic given that the postings occurred within about a week of each other in 2007—both more than six years prior to the initiation of this suit. *Cf. Bond v. U.S. Dep't of Justice*, 828 F. Supp. 2d 60, 78 (D.D.C. 2011) (noting under the single publication rule that "'in the print media world, the copying of an article by the reader—even for wide distribution—does not constitute a new publication' and . . . 'the equivalent occurrence should be treated no differently on the Internet.'" (quoting *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1087 (D.C. Cir. 2007))).

Cir. 2007)); *cf. Henry v. Raycom Media, Inc.,* 210 F. App'x 632, 633 (9th Cir. 2006) (affirming

that, under Arizona law, discovery rule should not toll the statute of limitations in a defamation

case where "internet postings were accessible by any member of the public for free").

The Court finds no genuine dispute of fact that the Tin Paris webpage was widely

available online.  Throughout this case—in fact, even well prior to the present suit between the

parties—Thanh himself has emphasized that the defamatory statements have reached a very large

audience of Vietnamese readers.  In his deposition testimony on August 22, 2012, he described

Tinparis.net as follows: "I believe it is an online magazine publishing to worldwide audiences."

Def.'s Mot. Summ. J., Ex. 7, Thanh Depo. 153:14–16, ECF No. 21-8 (emphasis added).  Thanh

later states, "I read it on the Internet and I realized that Ms. Hien [Ngo] had had this on Google.

That means the world had read it."  *Id.* at 153:20–21 (emphasis added).  Further, in his

deposition, he describes where he got the article, explaining "I accidentally visited Tin Paris.com

and found out about it, just recently. . . [in] early August this year."  *Id.* 153:8–10.  That he

"accidentally" discovered the article not only casts doubt on his story that it came from a friend,

but also highlights the relative ease with which he was apparently able to find it online.  To this

point, his affidavit opposing the present Motion concedes that he eventually found the Ngo's

article "on many Internet sites over and over again" including Google, Yahoo, and AOL.  Thanh.

Aff. ¶¶ 3, 7, ECF No. 23-1.  All of these "Internet sites," are, of course, search engines—which

further demonstrates that Thanh had little difficulty finding the article in question via a number

of online search engines once he became aware of its existence.

While certain online content may be difficult to find under specific circumstances, such

as where defamatory statements are posted on a private account with limited or no public access,

this is hardly such a case.  There is no dispute that the Tin Paris website was an online magazine

that was widely accessible. Further, this is not case in which purportedly defamatory statements online should have come as a surprise: Thanh and Ngo have been embroiled in defamation litigation—essentially at war—for well over a decade.  Thanh had every reason to be on the constant lookout for additional defamatory statements by Ngo since well before the disputed article was first published by her in 2007.

Because the Tin Paris website was widely available online, the discovery rule does not apply to postpone accrual of the limitations period.  That means Thanh's claim of false light, which was not filed until February 2014, is barred by Maryland's three-year statute of limitations.

## IV.

For the foregoing reasons, the Court will **GRANT** Ngo's Motion for Summary Judgment on Thanh's final claim of false light under Count I-A, and **ENTER FINAL JUDGMENT** in her favor.

A separate Order will **ISSUE**.


_____**/s/**_____

**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**July 22, 2016**